IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20CR00769 SRC |
| | ) |
| JONATHAN M. WELLS, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant, JONATHAN M. WELLS, through his attorney and submits this memorandum in support of a variance below the Guideline range - down to the minimum statutory term of 60 months.  This Court's range of options is limited only by the five-year mandatory minimum and the twenty-year ceiling set by Congress. Congress has concluded that there will be cases that while serious, warrant a sentence as low as five years in prison.

There are principled reasons justifying a variance. First, the defense moves for a variance based on the statutory charging decision made by the United States; receipt of child pornography (which carries a mandatory minimum of 5-years), versus possession of child pornography (which carries no mandatory minimum) which produces unwarranted sentencing disparity.  Secondly, the defense is asking the Court to vary down due to the major flaws of USSG §2G2.2, which produces a 13-level increase in Mr. Wells's offense level resulting in a guideline sentence that is greater than necessary to achieve the goals of sentencing. 18 U.S.C. Sec. 3553(a). Thirdly, the defense moves for a downward variance

based upon Mr. Wells's background and personal characteristics. The individual grounds are more fully discussed below.

The sentencing goals of 3553(a) can be achieved by a term of imprisonment shorter than that called for by the guidelines.  Such a harsh sentence should be saved for only the worst offenders.

## **INTRODUCTION**

The Supreme Court has firmly instructed that the sentencing court "may not presume that the Guidelines range is reasonable" but "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007).  The court must "frame[ ] its final determination in line with 18 U.S.C. § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." *Kimbrough v. United States*, 552 U.S. 85, 111 (2007)

Notably, the Supreme Court has authorized downward variances in cases where the Sentencing Commission has not acted "in the ordinary case," such that the guideline range is not determined based on empirical data and national experience, guided by a professional staff with appropriate expertise.  *Kimbrough*, at 109 (involving crack cocaine guidelines).  The Court in *Gall* likewise noted that "not all of the [g]uidelines are tied to [ ] empirical evidence."  *Gall*, 552 U.S. at 47 (2007).

Where a Guideline does not reflect the careful study of the Sentencing Commission, it is likely not a "reliable indicator of the Commission's perspective on a fair sentence."  *United States v. Shipley*, 560 F.Supp.2d 739, 744 (S.D. Iowa 2008).   In those

circumstances the court may vary downward after making an individualized determination that the Guideline would yield an excessive sentence.  *Spears v. United States*, 555 U.S. 261, 265 (2009).  But the Court may go further, and categorically reject a Guideline on policy grounds-in other words, when the Court finds that the Guideline consistently yields sentences greater than necessary to achieve the purposes of § 3553(a) and not simply based on an individualized determination that they yield an excessive sentence in a particular case." *Spears,* 264, 267 (discussing the holding in *Kimbrough* that "district courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range")*; United States v. Vandebrake,* 679 F.3d 1030, 1039-40 (8th Cir. 2012) (affirming categorical rejection of Guideline for antitrust offenses).[1]

## I.     The United States' Charging Decision Contributes to Unwarranted Sentencing Disparities.

Mr. Wells was charged with the receipt of child pornography which carries a 5-year mandatory minimum sentence. However, a receipt charge is almost indistinguishable from the charge of possession of child pornography, which carries no mandatory minimum. Defense counsel questions how one can possess child pornography without receiving it (unless a person produced the pornography, which is and should be punished more severely). In short, the offenses are essentially identical, but with very different statutory penalty ranges.

---

[1] *see also United States v. Henderson,* 649 F.3d 955, 960 (9th Cir.2011); *United States v. Grober,* 624 F.3d 592, 599–600 (3d Cir.2010); *United States v. Corner,* 598 F.3d 411, 415 (7th Cir.2010) (en banc); *United States v. Cavera,* 550 F.3d 180, 191 (2d Cir.2008) (en banc); *United States v. Rodriguez,* 527 F.3d 221, 227 (1st Cir.2008).

The Sentencing Commission has pointed out the underlying offense conduct in the typical receipt case is indistinguishable from the typical possession case. U.S. Sentencing Commission, *Federal Sentencing of Child Pornography: Non-Production Offenses* (June 2021), at 2 ("2021 Report").[2]  The Commission recommended in 2012 that Congress "align the statutory penalties for receipt offenses and possession offenses.[3]  The Commission found that "as a practical matter, the conduct underlying a receipt or possession charge is materially identical."[4] The Commission noted that "widespread sentencing disparities existed among similarly situated offenders sentenced under the non-production child pornography guideline based largely on whether they were charged with receipt or possession."[5]

Comparing "receipt offenders" to "possession offenders" under the Guidelines, the Commission specifically found that in FY 2019:

> The only difference between the two groups of offenders is the starting point of their guideline calculation based on the count(s) of conviction. Applying §2G2.2 resulted in a guideline range of 78 to 97 months for the possession offenders and 97 to 121 months for the receipt offenders. Thus, the guideline provides different sentencing ranges for two groups of offenders who seemingly engaged in the same conduct.
>
> There are considerable differences in how these similarly situated possession and receipt offenders were sentenced. The average sentence for these receipt offenders (81 months) was 34 months longer than the similarly situated possession offenders (47 months). Taken together, the overall spread of sentences for the 171 similarly situated offenders ranges from probation to 228

---

[2] The full 2021 Report can be found at:
https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses

[3] *Id.,* at 2.
[4] *Id.* at 2, 12.
[5] *Id.* at 2

months. This analysis reveals striking sentencing differences both among and between similarly situated possession and receipt offenders.[6]

The Commission found that in FY 2019 the most common possession offenders received a base offense level of 18. The average sentence for defendants convicted of possession of child pornography was 47 months, with the overwhelming majority (81.5%) sentenced below the guideline range.[7]  Notably, sentences ranged from probation to 228 months for these 119 possession offenders, who had the same guideline calculation through application of the same specific offense characteristics and criminal history category.[8]

In contrast, in FY 2019, the most common receipt offender received the same guideline range calculation as the possession offenders analyzed, except the base offense level started at 22 and was reduced by two levels because the actual conduct was limited to receipt of child pornography."[9]  The resulting guideline range for these receipt offenders was 97 to 121 months.[10]  This is the exact guideline range that Mr. Wells faces.[11]

In addition, the 2021 Report also found that those convicted of possession more often engaged in the aggravating conduct of distributing pornography. Specifically, the Commission found that "offenders sentenced for possession actually distributed child pornography (56.8%) at a rate almost three times higher than those sentenced for receipt (21.2%). Therefore, the decision to charge the much harsher receipt offense may not

---

[6] *Id.* at 56.
[7] *Id.* at 54-55.
[8] Id., at 54-55.
[9] *Id.*
[10] *Id.*
[11] PSR ¶ 81.

5

always reflect the seriousness of offender conduct relative to distribution."[12]  Mr. Wells did not distribute child pornography yet he must serve a minimum five years of incarceration.

In Mr. Wells's case, if the guideline enhancements that apply in the vast majority of child pornography cases, USSG §§2G2.2(b)(2), (b)(4), (b)(6), and (b)(7) (which are discussed below), were not applied to his guidelines, his total offense level would be reduced by 13 levels, resulting in a guideline range of 24-30 months.[13]  However, because the United States chose to charge him with "receipt" of child pornography instead of just "possession," the Court has no authority to impose a lower sentence due to the five-year mandatory minimum, should it wish to.  As the Commission correctly notes, receipt and possession crimes are "similarly situated" and "indistinguishable,"[14] yet they are treated very differently both statutorily, and under the Guidelines, leading to wildly divergent sentences. Congress has not acted on the Commission's request to address the statutory problems in child pornography cases. Yet, the Commission's analysis shows that sentencing disparities for similarly situated non-production child pornography offenders persist today.[15]

## II.    A Variance is Reasonable in View of the Valid Critique Surrounding the History and Application of USSG 2G2.2 and Because it Overstates the Seriousness of a mine-run offense like Defendant's Resulting in a Sentence Greater Than Necessary to Meet the Purposes of Sentencing in 18 U.S.C. Sec. 3553(a).

In the wake of *Kimbrough* and its progeny, e.g., *Spears*, numerous district courts have questioned the child pornography guidelines on policy grounds.  USSG 2G2.2 has

---

[12] *Id.* at 51.
[13] Total Offense Level 17, CHC I.
[14] *Id.* at 12.
[15] Id. at 53.

been the subject of intense criticism.   Courts have explained that the child pornography guideline enhancements are not a reliable indicator of the Sentencing Commission's perspective on a fair sentence because they fail to reflect the institutional expertise of the Commission, are not based on careful study and empirical data, are in many cases duplicative, and fail to distinguish between aggravated and mine-run cases.  See *United States v. Beiermann*, 599 F.Supp.2d 1087 (N.D. Iowa 2009)(collecting cases); *United States v. Phinney*, No. 08CR260, 2009 WL 425816, at *3 (E.D. Wis. Feb. 20, 2009)(collecting cases); *United States v. Henderson*, 649 F.3d 955, 960-63 (9th Cir. 2011).   Though 2G2.2 originated with the Commission, its content has been repeatedly diverted from the Commission's judgment by congressional mandates.  "… § 2G2.2 is the result of 2 decades worth of Congressional directives[16] – at times actively opposed by the Commission – that have continually ratcheted up penalties and piled on enhancements." *United States v. Abraham*, 944 F.Supp.2d 723, 728 (D. Neb. 2013); *see generally* Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (Jan. 2009)(detailing the various congressionally mandated revisions to the child pornography guidelines and their effect on "ordinary" defendants).[17]

"The real problem, as courts across the country have recognized, is that § 2G2.2 simply

---

[16] In the PROTECT Act of 2003, Congress directly amended the guidelines by increasing the number of enhancements in the child pornography guidelines and limited sentencing judges' ability to depart below the guideline ranges in child pornography cases.  See U.S. Sentencing Comm'n. The History of the Child Pornography Guidelines, 38-40 (Oct. 2009); https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-projects-and-surveys/sex-offenses/20091030_History_Child_Pornography_Guidelines.pdf

[17] Available at Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (ussc.gov).

does not work." *Id.* citing *United States v. Grober,* 624 F.3d at 607-10; *Henderson*, 649 F.3d at 960-63; *United States v. Dorvee*, 616 F.3d 174, 184-86 (2nd Cir. 2010); *United States v. Diaz,* 720 F.Supp.2d 1039, 1041–42 (E.D.Wis.2010) (collecting cases); *United States v. Zauner*, 688 F.3d 426, 431 (8th Cir. 2012)(J. Bright, concurring and noting child pornography guidelines eliminate any meaningful distinction between least and most culpable offenders and that courts are free to disagree with them); *United States v. Burns*, 834 F.3d 887 (8th Cir. 2016)(noting district court "may disregard the child pornography sentencing guidelines on policy grounds…"); *United States v. Price,* 2012 WL 966971, at *11 (C.D. Ill. Mar. 21, 2012)(noting similar issues with 2G2.1 and departing downward); *United States v. Cruikshank.*, 667 F.Supp.2d 697, 702 (S.D.W.Va. 2009).

Rather than sensibly differentiating between offenders based on more or less culpable conduct and dangerousness, a series of amendments to § 2G2.2 by Congress often results in a sentence for the average offender at or close to the statutory maximum, i.e., twenty years.  See, e.g., *United States v. Hanson*, 561 F.Supp.2d 1004, 1011 (E.D.Wis. 2008)(noting that defendant appeared fairly typical and yet "found himself in a guideline range that exceeded the statutory maximum at the high end").  The guideline consists of nearly universal application of a series of outdated enhancements. Section 2G2.2 operates in such a blanket manner that it fails to distinguish between more and less severe offenders let alone with regard for the nature of their offense or their personal characteristics.  As the Sentencing Commission has acknowledged, the child pornography guidelines are rife with enhancements that almost invariably accompany a child pornography conviction, including Mr. Wells's, related to the age of the child depicted in

the images (+2) (2G2.2(b)(2), the content of the images (+4) (2G2.2(b)(4), the use of a

computer to receive or transmit the images (+2) (2G2.2(b)6), and the number of images

(+5) (2G2.2(B)(7)(B) thereby inflating the sentencing range and eliding meaningful

distinctions of culpability. *see* U.S. Sentencing Commission, *Federal Child Pornography*

*Offenses* iii & n. 14 (2012).[18]

> As one district court judge explained,

> These enhancements are almost always applicable because the Internet has
> become the primary vehicle for delivering or consuming pornography (both
> legal and illegal) and the number and type of images received is frequently
> accidental; it is thus a poor indicator of culpability. This means of distribution
> facilitates the easy collection of a large number of images (triggering the
> enhancement for quantity). Because digital collections are generally built by
> trading images in Internet chat rooms, a defendant generally has very little
> control over the quantity of images he receives or the content of those images
> (triggering enhancements for depictions of sadistic sex acts and pictures of
> children under the age of twelve). The predominance of this illicit bartering
> also means that most defendants receive another enhancement for distributing
> images of child pornography. See 2G2.2(b)(3)(F). Given their broad
> applicability then, most of the enhancements provided for in 2G2.2 are of little
> use in distinguishing between offenders and place most first offenders in the
> mine run case at or above the statutory maximum sentence.

*United States v. Burns*, No. 07CR556, 2009 WL 3617448, *7 (N.D.Ill. Oct. 27,

2009)(unpub.).

Together, the five enhancements applied in the majority of child pornography cases

mean that before acceptance of responsibility is factored in, the § 2G2.2 receipt,

possession, and distribution offender has an adjusted offense level of 37. With no prior

criminal history, that equates to a 210-262 month Guideline range, rapidly approaching

---

[18] available at:http://www.ussc. gov/Legislative-and-Public-Affairs/ Congressional–
Testimony–and–Reports/Sex–Offense–Topics/ 201212–Federal–Child–Pornography–
Offenses/(hereinafter, "2012 Report").

and exceeding the statutory maximum of 240 months "based solely on sentencing enhancements that are all but inherent to the crime of conviction." *Abraham*, 944 F.Supp.2d at 729 [internal citations omitted]; see also *United States v. Millette*, Docket No. 2:16CR00004-NT, 2020 WL 7502454, at *5 n.5 (D. Me. Dec. 21, 2020).  Mr. Wells's total offense level 30 reflects the application of four of these omnipresent enhancements, resulting in 13 additional offense levels. PSR ¶¶34-37.   Mr. Wells did not receive the fifth enhancement because he did not engage in distribution of any images. The end result, a guideline range of 97-121 months, is a severe advisory sentencing range that must be rejected as inconsistent with the principles of individualized sentencing called for in 18 U.S.C. § 3553(a) and 28 U.S.C. § 991(b)(1)(B).   Accordingly, Mr. Wells is requesting a sentence of 5 years imprisonment, the mandatory minimum.

As noted above, the Guidelines for non-production child pornography cases have come under heavy criticism for years as being unduly harsh and not focused on particularly relevant factors, such as whether the defendant has ever had sexual contact with a minor. Here, there is no allegation that Mr. Wells has ever engaged in any predatory behavior towards children. The Sentencing Commission itself had recognized that the Guidelines are not working as intended in the context of offenders who commit non-production child pornography offenses and that § 2G2.2 warrants revision. Early on, the Commission in a comprehensive report on child pornography, concluded that "sentencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates..."  U.S. Sentencing Commission Report: The History of the Child

Pornography Guidelines (October 2009) at 38, 54; *United States v. Morace*, 594 F.3d 340, 346 (4th Cir. 2010).

The Second Circuit in *Dorvee*, took a critical view of the recurrence of the same enhancements and the unfairness that results from sentencing uniformity when the same enhancements are applied ("Consequently, adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute pornography for pecuniary gain and who fall in higher criminal history categories.") This panoply of enhancements applies so frequently that it serves to conflate offenders rather than differentiate among them. *Id.* 616 F.3d 174, 184-87.

The court in *Dorvee* also noted that many of the changes directed by Congress were openly opposed by the Sentencing Commission:

> The Commission has often openly opposed these Congressionally directed changes. For instance, the Commission criticized the two-level computer enhancement (which is currently set forth at § 2G2.2(b)(6) and was adopted pursuant to statutory direction) on the ground that it fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. See United States Sentencing Commission, Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties, June 1996, at 25-30, available at http://www.ussc.gov/r_congress/SCAC.PDF (last visited [*29] April 15, 2010). n7. Speaking broadly, the Commission has also noted that "specific directives to the Commission to amend the guidelines make it difficult to gauge the effectiveness of any particular policy change, or to disentangle the influences of the Commission from those of Congress." See United States Sentencing Commission, Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform, 2004, at 73, available at http://www.ussc.gov/15_year/chap2.pdf (last visited April 15, 2010).

*Id.* at 95-96.

This view was underscored by former U.S. Sentencing Commissioner and Federal District Court Judge William K. Sessions III.  In "*At the Crossroads of the Three Branches: The U.S. Sentencing Commission's Attempts to Achieve Sentencing Reform in the Midst of Inter-Branch Power Struggles*," Judge Sessions took aim at the congressional measures that have undermined fundamental fairness in sentencing defendants like Mr. Wells. According to Judge Sessions,

> "The PROTECT Act was one of several specific directives from Congress that, along with a growing number of statutes requiring mandatory minimum prison sentences, were designed to increase punishment, restrain judges' sentencing discretion, and afford prosecutors more power over sentencing. As a result, the sentencing guidelines have become increasingly more severe." *Id* at 3.

a.  The Sentencing Commission's 2021 Report

In June of 2021, the Sentencing Commission issued a report entitled "*Federal Sentencing of Child Pornography Non-Production Report*." ("2021 Report").[19] This Report updates and expands on the Commission's 2012 Report to Congress in which it leveled the same harsh criticisms against the Congressionally-directed Guideline scheme – noting that § 2G2.2 routinely results in overly -severe sentencing ranges in mine-run non-production cases.[20]  The Commission in its 2012 Report explained that by FY 2010, four of the six enhancements in § 2G2.2(b) - together accounting for 13 offense levels - applied to the typical non-production child pornography offender and thus failed to meaningfully

---

[19] The full 2021 Report can be found at: https://www.ussc.gov/research/research-reports/federal-sentencing-child-pornography-non-production-offenses.
[20] 2021 Report at 1. The full 2012 Report can be found at: https://www.ussc.gov/research/congressional-reports/2012-report-congress-federal -child-pornography-offenses

distinguish between more culpable and less culpable offenders.[21]  The Commissioned
warned that these enhancements are "outdated and disproportionate."[22]  They derived
from an earlier technological era "when offenders typically received and distributed child
pornography through the postal system and therefore, are out of date in current times.[23]
The Commission found that technological changes such as the widespread use of peer-to-
peer file-sharing networks, have changed the typical offender's profile.  In particular, the
anonymous and ready access offered by new technologies means that the typical offender's
collection has not only grown in volume but is also likely to include more of the worst
kinds of material, including graphic sexual abuse of prepubescent children. Now, even
"entry-level offenders" can easily acquire and distribute large quantities of child
pornography[24].  The Commission recommended that Congress take several steps to
remedy the problems with the child pornography statutes and guidelines.[25]  The 2012
Report reflects that by 2011, 62.5 percent of child pornography defendants were sentenced
below the guideline range, even when no substantial assistance motion was filed by the
government.[26]  The Commission recommended revising §2G2.2 to eliminate the
disproportionate emphasis on outdated measures of culpability, including those for use of
computer and type and volume of images possessed, and that Congress align the statutory

---

[21] *Id.,* at 18-19.
[22] *Id.*, at xxi, 321, 331.
[23] 2012 Report at iii, 313.
[24] Id. at 6, 149, 154, 312-13.
[25] 2021 Report at 2.
[26] 2012 Report at ii.

penalty schemes for receipt offense and possession offenses.[27] However, Congress has not acted on the Commission's requests and recommendations:

> To date, Congress has not implemented the Commission's statutory or guideline recommendations. Therefore, §2G2.2 remains largely unchanged, with the guideline enhancements for non-production child pornography offenders at issue in the 2012 Child Pornography Report still in effect. As a result, judges have continued to sentence most non-production child pornography offenders below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a).[28]

In its 2021 Report, the Commission "analyzed 1,340 cases in which [nonproduction] offenders were sentenced under § 2G2.2 in fiscal year 2019 for which courts submitted sufficient sentencing documentation."[29]  The 2021 Report also includes data on offenders sentenced from 2005 to 2019.[30] The Commission observed that:

> Technological changes have increased the volume and accessibility of child pornography. As a result of such changes, the typical offender's collection in fiscal year 2019 was voluminous and contained a wide variety of graphic sexual images, including images of very young victims.[31]

The Commission found that the § 2G2.2 enhancements have not kept pace with technological advancement and "[f]our of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under § 2G2.2."[32]  The 2021 report also found that:

> In fiscal year 2019, these enhancements each continued to apply in the vast majority of non-production child pornography cases. Notably, over 95 percent of non-production child pornography offenders received enhancements for use

---

[27] *Id.*

[28] *Id.* at 3.

[29] "This data set includes 625 distribution offenders, 146 receipt offenders, and 569 possession offenders." 2021 Report at 29

[30] *Id.* at 8.

[31] *Id.* at 30.

[32] *Id.* at 4.

of a computer and for the age of the victim (images depicting victims under the age of 12). The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler (84.0% of cases) or having 600 or more images (77.2% of cases) were also applied in most cases.[33]

The defense asks the Court to vary below the guideline range to a sentence of 5 years due to the application of USSG §§ 2G2.2(b)(2), (b)(4), (b)(6), and (b)(7). These enhancements to Wells's sentencing range recur in each and every case, thereby failing to distinguish as to more culpable, more dangerous offenders. These enhancements that were only intended to apply to the most serious child pornography offenses were routinely applied to most non-production child pornography offenders like Mr. Wells."[34] They lead to a sentence greater than necessary to achieve, contrary to § 3553(a).   As the D.C. Circuit said of a similar request for a downward departure from the crack cocaine Guidelines, "[I]t remains of great importance that, in its recommendations, the Commission candidly and forthrightly exposed the weaknesses and failings of its Guideline…" *United States v. Pickett*, 475 F.3d 1347, 1355 (D.C. Cir. 2007).   Indeed, in *Pickett*, the Court reversed the district court for failing to consider how the Commission's own thinking supported a departure request.   *Id.* at 1356.

### 1.  Two-Level enhancement for images of prepubescent children

The Commission found that in FY 2019, the type of images is almost universal in child pornography cases - 95% of all non-production child pornography defendants received the § 2G2.2(b)(2) enhancement for images of the victims being under 12 years of age.[35]  The Commission further noted that:

---

[33] *Id.*
[34] *Id.* at 2.
[35] *Id.* at 4.

A majority of the non-production child pornography offenders had images or videos of very young victims. In fiscal year 2019 ... nearly every offender (99.4%) had images or videos depicting victims who were prepubescent or under the age of 13. In other words, *less than one percent* of non-production offenders had images or videos consisting solely of victims age 13 years or older.[36]

The Commission found that "technological changes have resulted in…ready accessibility of child pornography," including graphic sexual images of very young victims, which "previously was not widely circulated."[37]

### 2. Four-Level Enhancement for Sadistic/Masochistic Images

The Commission found that in FY 2019, 84% of all non-production child pornography defendants received the USSG §2G2.2(b)(4) enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler.[38]  The four-level increase applies whether the defendant has a few such images or thousands.

### 3. Five-Level Enhancement for Number of Images

Mr. Wells was also given the very common five-level enhancement under §2G2.2(b)(7)(D) for possessing more than 600 images. However, the Commission found that in FY 2019 this enhancement was applied in 77.2% of non-production cases.[39] In fact, most offenders have well above the 600 images needed to qualify for the maximum 5-level enhancement under §2G2.2(b)(7).[40]

### 4. Two Level Enhancement for Use of a Computer

---

[36] *Id.* at 31 (emphasis added).
[37] 2012 Report at 6.
[38] 2021 Report at 19.
[39] 2021 Report, at 4.
[40] 2021 Report, at 30.

Mr. Wells was also given the common two-level enhancement under §2G2.2(b)(6) for use of a computer. The use of a computer is inherent in the offense which Wells pled to. For example, of all sentences under §2G2.2 in FY 2019 over 95% involved a computer (qualifying for a two-level increase pursuant to § 2G2.2(b)(6)).[41] As one federal District Judge testified before the Commission: "As widespread as computer use is now, enhancing for use of a computer is a little like penalizing speeding but then adding an extra penalty if a car is involved."[42] Further, the enhancement fails to distinguish serious commercial distributors of online pornography from more run-of-the-mill users. See U.S. Sentencing Commission, Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties, June 1996, at 25-30.[43]

In 1995, Congress specifically directed the Commission to include at least a two-level enhancement if a computer was used to transport the child pornography. Assessing offender culpability by computer use may have had a rational basis twenty-seven years ago when very few Americans had access to the Internet. It no longer does. Today, 93% of American

---

[41] 2021 Report, at 19.
[42] Federal Sentencing Practices and the Operation of the Federal Sentencing Guidelines: Reg'l Hearing Before the U.S. Sent'g Comm'n, at 5 (Nov. 2009) (statement of Robin J. Cauthron, Judge, W.D. Okla.), available at http://www.ussc.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20091119–20/Agenda.html.
[43] available at http://www.ussc.gov/r_congress/SCAC.PDF

adults use the Internet.[44] Technological advances have eliminated the utility of the computer enhancement as useful to sort culpability among defendants.

USSG §2G2.2 specific offense characteristics are purportedly designed to "increase the offense level based on the presence of an aggravating factor" in order to help the Court distinguish more culpable offenders.[45] But the ubiquity of computer use among those sentenced under § 2G2.2 now "fails to distinguish adequately between more and less severe offenders."[46] The enhancement for use of a computer §2G2.2(b)(6)) should be rejected outright.

## II. Both the Department of Justice and the Judicial Conference of the United States have agreed that § 2G2.2 was *not* based on "empirical evidence" – urging the Commission to reform this inherently flawed and unfair guideline.

In testimony presented during the Sentencing Commission's February 2012 "Public Hearing on Child Pornography Offenses," Chief Judge M. Casey Rodgers, N.D.Fla., who spoke for the Judicial Conference, noted that in the "vast majority" of possession and receipt cases in his district:

> the offense characteristics involving the use of the computer; material depicting a child under 12; material depicting sadistic, masochistic or violent conduct; and material involving over 600 images were all present. ... [O]ur district's figures show that the offense characteristic of material depicting sadistic, masochistic or violent conduct applied in 87% of receipt cases and 61% of possession cases. Applying Section 2G2.2 to the typical first-time offender with no criminal history demonstrates how quickly the offense characteristics ratchet up the sentencing range from the base offense level ..

---

[44] Pew Research Center, Internet/Broadband Fact Sheet, April 7, 2021, https://www.pewresearch.org/internet/fact-sheet/internet-broadband/.

[45] 2021 Report, at 19.

[46] *Id.*

The history [of the Child Porn Guidelines] reveals that the statutory directives increasing the base offense levels and adding large level enhancements have been imposed without supporting empirical data correlating them to the harm caused by a possession or receipt offender or justifying the amount of levels added for a particular offense, thereby creating a concern over disproportionality. ...

There is a wide range of culpable conduct in child pornography offenses, even among receipt and possession offenses. [H]owever, the specific offense characteristics of use of a computer, material depicting a prepubescent minor, more than 600 images, and materials depicting sadistic, masochistic or violent conduct apply frequently, even to the mine-run offender. Thus, although they effectively further Congress's intent to increase punishment, they are ineffective in distinguishing conduct that proportionally increases harm in the possession or receipt context. This results in sentences that are disproportionate to the offense severity. The stark absence of offenders whose guideline range calculates at the low end of the statutory range is a strong indication that the "heartland" characteristics are over-valued in this guideline.[47]

In a June 28, 2010 letter to the Sentencing Commission, the Director of DOJ's Office of Policy and Legislation, Jonathan Wroblewski, encouraged the Commission to conduct a review of –and recommend reforming– the child pornography guidelines "which have lost the respect of a large number of judges."[48] See Exhibit A, attached.  Noting that Congress has repeatedly directed the Commission to amend the guidelines for child pornography offenses to increase base offense levels and to add enhancements, Mr. Wroblewski urged the Commission to recommend to Congress legislation that would permit revision of the guidelines "to better calibrate the severity and culpability of defendants' criminal

---

[47] Testimony available at
http://www.USSC.gov/Legislative_and_Public_Affairs/Public_Hearings_and_Meetings/20120215-16/Testimony_15_Rogers.pdf.
[48] Letter from Jonathan Wroblewski to Hon. William K. Sessions III, Chair, U.S. Sent'g Comm'n (June 28, 2010) at 2, 6 ("Wroblewski Letter).

conduct…"[49] The root problem of course is that the child pornography guideline was not developed by the Commission as directed in the Sentencing Reform Act.  In the Wroblewski letter, the Department advised that the child pornography guideline has been driven up by congressional directives and that the guidelines should be updated to address "changes in technology and in the way these crimes are regularly carried out today…"[50]

## III.   The Child Pornography Guidelines Are Routinely Rejected by Federal Courts Around the Country.

The concerns reflected in the Sentencing Commission's reports are mirrored in judicial opinions from across the country, some even before the Commission itself recognized the flaws in the Guideline. See *United States v. Jenkins*, 854 F.3d 181, 188-91 (2d Cir. 2017)(reversing a child pornography sentence for relying too heavily on § 2G2.2 and its "all-but- inherent" enhancements); *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) (finding sentence substantively unreasonable after explaining that the enhancements "are all but inherent to the crime of conviction," and noting that the guideline range for an offense involving actual contact was likely to be lower than a guideline range under § 2G2.2); *United*

---

[49] The Wroblewski letter urged the Commission to recommend reforms of the child pornography guideline to better reflect offense seriousness and offender culpability, citing some of the congressional directives that have required increased guideline ranges over the years, including the PROTECT Act. *Id*. at 6. The Department noted in particular "enhancements for the use of a computer in the commission of the crime and for the number of images involved in the crime" as problematic. *Id*. The Commission was compelled to add the computer enhancement by the Sex Crimes Against Children Prevention Act of 1995 despite its objections to its breadth. *See* U.S. Sent'g Comm'n, Report to Congress, Sex Offenses Against Children, at 28-30 (1996). The number of images enhancement was a direct amendment of the guideline, drafted by the employee of the Department of Justice and included in the PROTECT Act via the Feeney Amendment. See Pub. L. No. 108- 21, Section 401(i)(1)(B),(C).  *Id*. at 6.
[50] *Id.*

*States v. Olhovsky,* 562 F.3d 530, 549-553 (3 Cir. 2009); *United States v. Morace*, 594 F.3d 340, 345 (4th Cir. 2010) (collecting cases and discussing nationwide trend of downward departures and variances in child pornography cases); *United States v. Childs*, 976 F.Supp.2d 981, 982 (S.D. Ohio 2013) ("There is widespread agreement among judges, lawyers and legal scholars that the guidelines for child pornography offenses are seriously flawed."); *United States v. Beiermann*, 599 F. Supp. 2d 1087, 1100 (N.D. Iowa 2009) (collecting cases); *United States v. Abraham*, 944 F. Supp.2d 723, 731 (D. Neb. 2013) ((varying downward based on policy disagreement with 2G2.2 recognizing that the Guideline for non-production cases does not help the sentencing court to distinguish between run-of-the-mill offenders and the worst of the worst and noting that the Court has a duty to make such distinctions at every sentencing); *United States v. Grober*, 624 F.3d 592 (3d Cir. 2010) (upholding below-range sentence where the district court articulated reasons for disagreeing with guideline range calculated under § 2G2.2); *United States v. Catlett*, Case No. 15-20482, 2016 WL 6246564 (E.D. Mich. 2016) (imposing sentence well below guideline range when defendant was diagnosed as pedophile); *United States v. Monge*, Case No. 5:14-cr-65, 2015 WL 787099 (C.D. Ca. 2015) (imposing 60-month mandatory minimum for receipt instead of 188 to 235 guideline range sentence); *United States v. Stieren*, Case No. 8:12-cr-423, 2013 WL 5539359 (D. Neb. 2013) (imposing mandatory minimum sentence and noting that the guideline range is not reliable indicator of a fair sentence); *United States v. Kelly*, 868 F. Supp. 2d 1202 (D. N.M. 2012) (rejecting guideline calculations and imposing 60-month mandatory minimum sentence); *United States v. Cameron*, 1:09-cr-00024, 2011 WL 890502 (D. Maine Mar. 11, 2011) (imposing 192-month sentence where the defendant

went to trial and had a guideline range of 262 to 327 months); *United States v. Zapata*, Case No. 1:10-cr-40, 2011 WL 4435684 (N.D. Ind. 2011) (imposing mandatory minimum sentence where defendant uploaded 144 images to websites and guideline range was 151 to 188 months); *United States v. Cruikshank*, 667 F. Supp. 2d 697 (S.D.W.V. 2009) (declining to impose guideline range sentence in light of the overly harsh guidelines); *United States v. McElheney,* 630 F. Supp. 2d 886 (E.D. Tenn. 2009) (sentencing defendant below the guideline range); *United States v. Klear*, 3 F. Supp. 3d 1298, 1307 (M.D. Ala. 2014) (concluding that the Sentencing Commission report "presents exactly the basis for a reasoned case for disagreeing with the policy judgments behind the child pornography guidelines" (quotation omitted)). In *Klear*, the Court varied downward to impose a nine-year sentence. Id. at 1311; See *United States v. Henderson*, 649 F.3d 955, 960, 962 (9th Cir.2011) (concluding "district judges must enjoy the same liberty to depart from [the child pornography Guidelines] based on reasonable policy disagreement as they do from the crack-cocaine Guidelines discussed in *Kimbrough* " because "[m]ost of the revisions [to § 2G2.2] were Congressionally-mandated and not the result of an empirical study").

Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. Congressional directives shaped the current child pornography guideline, and "[t]he § 2G2.2 sentencing enhancements cobbled together through this process routinely result in Guidelines' projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *Dorvee,* 616 F.3d at 186. In *Vazquez v. United States*, 558 U.S. 1144 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General Kagan's position that "all guidelines," including

22

Congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." Brief of United States in *Vazquez v. United States*, 2009 WL 542302 at *11 (Nov. 16, 2009) (No. 09-5370). As the Sixth Circuit has previously recognized, "all of the sentencing guidelines are advisory," including those directed by Congress." *United States v. Michael*, 576 F.3d 323, 328 (6th Cir. 2009)(Congressional directives simply "tell[] the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it."); *United States v. Grober*, 624 F.3d 592, 600-01 (3rd Cir. 2010)(applying abuse of discretion review to a district court's policy-based downward variance from § 2G2.2 because, "the Commission did not do what 'an exercise of its characteristic institutional role' required – develop § 2G2.2 based on research and study rather than reacting to changes adopted or directed by Congress; *id* at 608-09 ("Congress, of course…may enact directives to the Commission which the Commission is obliged to implement," but *Kimbrough* permits district courts to vary even where a guideline provision is a direct reflection of a congressional directive").

This Court may thus properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, *see Kimbrough*, 552 U.S. at 109-10 consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical date of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough

approximation of sentences that might achieve § 3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." *Kimbrough, at 109-10; Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.

## IV.    Relevant Sentencing Statistics

Federal courts have often sought the guidance of the Sentencing Commission's sentencing statistics when seeking to implement the directives in 18 U.S.C. § 3553(a). A review of relevant data from the Sentencing Commission's Judiciary Sentencing Information (JSIN) tool which provides nationwide sentencing data on similarly situated defendants is instructive. Over the past five fiscal years (FY 2016-2020), for 99% of child pornography offenders with a final offense level 30 under USSG 2G2.2, in Criminal History Category I, and a guideline range of 97-121 months, the average and median length of imprisonment imposed was 69 months and 66 months, respectively. See Exhibit B, attached. This data confirms that the child pornography guideline has lost significant persuasive impact with judges and with prosecutors as the participants in the federal criminal justice system who conscientiously labor to produce fair and reasonable sentences that are tailor made to the unique circumstances of the child pornography offense and child pornography offenders. These relevant statistics show that a 97-121 month sentence for Mr. Wells is outside the range of reasonable sentences, even when the defendant's conduct is the type that is at the heart of the child pornography sentence.

In the context of the on-going multi-source recognition of the fundamental flaws of the child pornography guideline, as well as the Sentencing Commission sentencing data, there is no compelling reason to believe that the guideline range in Mr. Wells's case, as

determined by § 2G2.2, reflects and/or comports with the sentencing goals enumerated in 18 U.S.C. § 3553(a).  On the contrary, a guideline sentence would be inconsistent with "[C]ongress' basic statutory goal—a system that diminishes sentencing disparity— [that] depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction." *United States v. Booker* 543 U.S. 220, 250 (2005). (emphasis in original).

## V.   THE 3553(A) FACTORS SUPPORT A VARIANCE TO THE FIVE YEAR STATUTORY MINIMUM.

The defense further moves the Court to vary below the guideline range and sentence Mr. Wells to the 5-year mandatory minimum authorized by Congress.  That minimum is appropriate for people like Mr. Wells, a 39 year old, first time offender.  He has worked legitimately all his life and has no history of crime.  Mr. Wells has not engaged in any hands-on contact offenses. Unlike others charged in these offenses, Mr. Wells did not engage in the distribution of any images nor did he participate in any online communities or forums related to this offense.

Mr. Wells also has an early history of abuse which has impacted him throughout his life. See PSR ¶53, 58.  He will benefit from counseling and treatment going forward to overcome these early traumatic experiences. Mr. Wells is a low risk for recidivism.  He has the strong support of his family members and a long history of stable employment.

These offenses occurred during a very unstable period in his life.  Mr. Wells had originally sought counseling and services for his pornography addiction in 2018 to 2019.  He was trying to be proactive and get needed help.  He had a decent handle on life when COVID-19 hit.  After COVID-19 shut down much of the world, Mr. Wells was let go from his own

employment in February of 2020.  Work was not easy to find in the pandemic.  In March of 2020, he was prescribed medication for ADHD which was impacting his life and causing him to hyperfocus on things.  As the sole supporter for his family, he experienced significant stress and handled it poorly.  Mr. Wells abused alcohol and reengaged in unhealthy amounts of viewing of pornography, leading eventually to child pornography and the instant offense.

Mr. Wells is deeply remorseful for his actions and the impact they have had on others. He has caused harm to his wife and children both mentally and economically.  His wife, who was a stay at home mother, was forced to sell their family home and drastically downsize their lives and find employment.  His children miss him.  He also realizes that he broke the trust of many in his community and his life will never be the same.  The tremendous number of restrictions that will be placed on him combined with the very public nature of this offense will ensure his punishment continues long after his release from confinement.  Mr. Wells is prepared to live by all the conditions set by this Court and understands the consequences for his actions will remain with him forever as a life time registered sex offender.  These additional factors supporting a variance are *not* properly taken into account in § 2G2.2.

Courts are often asked to speculate or predict the future actions of individuals who stand before them.  This Court should look to what we do know about Mr. Wells.  Mr. Wells has no history of contact offenses of any kind.  Mr. Wells sought out treatment in the past when he engaged in concerning behavior. He has a supportive family that will hold him accountable and help him succeed.

Courts should also look to what we know as fact. We have the benefit of years of statistics that give insight into the future of sex offenders.  The Sentencing Commission

found that "[M]ost social science research suggests that viewing child pornography alone did not cause offenders to commit additional sex offenses absent other risk factors. The primary risk factors for other sex offending were holding deviant sexual beliefs and anti-sociality."[51] The overall recidivism rate of the 1,093 non-production child pornography offenders in the Commission's 2021 Report was 27.6% three years after release from incarceration (or the commencement of probation).  Even for those defendants that re-offend, the most common new offense involved the administration of justice, which includes offenses like contempt of court, failure to appear, obstruction of justice, and probation and parole violations. As Judge Jane Kelly noted, only 4.3% were rearrested for a sex offense and 1.3% were arrested for a contact sex offense.[52]

The Commission has compiled considerable data on the subject. A study by the Commission of 610 defendants convicted of "non-production" child pornography offenses, tracked for an average of eight and a half years after release, yielded a 7.4% rate for "sexual recidivism"— encompassing 3.6% for "contact" offenses, 2.3% for new child pornography offenses, and 1.5% for "non-contact sex offenses involving obscenity or commercial sex."[53] As one district court observed as part of an exhaustive analysis of the subject, "Recent research suggests that the recidivism rate of child pornography offenders may be low, with most child pornography viewers unlikely to engage in future sexual offenses." *United States v. R.V.,* 157 F. Supp. 3d 207, 240 (E.D.N.Y. 2016).

---

[51] 2021 report, at 39.

[52] *United States v. Michael*, No. 19-1885, 2021 WL 4142410, at *5 n.5 (8th Cir. 2021) (Kelly, J., dissenting) (citing 2021 Report, at 65).

[53] 2012 Report at 294-301.

These finding suggests this category of child pornography offender is far less dangerous. Mr. Wells' risk of reoffending is very low and he will not pose a danger to the public once released.

## CONCLUSION

WHEREFORE, for the foregoing reasons, JONATHAN WELLS respectfully requests that the Court vary from the advisory guideline range and impose a sentence of 5 years imprisonment.

Respectfully submitted,

/s/ *Diane Dragan*

DIANE DRAGAN
Assistant Federal Public Defender
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Diane_Dragan@fd.org

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Jillian Anderson, Assistant United States Attorney.

/s/ *Diane Dragan*

DIANE DRAGAN
Assistant Federal Public Defender